All right, we'll call the next case. Case In Re The Trustees of Conneaut Lake Park, Park Restoration LLC versus Erie Insurance Exchange et al. Mr. Martinez. Good afternoon, Your Honor. Actually, still morning? Yes, it still is. It should be. Good morning, Your Honors. My name is Arthur Martinucci. I represent the appellants in this case. I'm at Township Crawford County, the Crawford County Taxing Bureau, the Conneaut School District, and I want to thank you for your time in giving us the opportunity to argue this matter before you today. I would ask for three minutes rebuttal. Thank you, sir. I am not going to claim that this is a simple case for you to decide because it is, from what we can best tell, a matter of first impression. Well, then let me ask you this question. Should we certify this issue to the Pennsylvania Supreme Court? My understanding is that that would be an exercise in futility because the practice has been for the Pennsylvania Supreme Court to return those certification requests. Well, that's not necessarily true. I mean, they have and they haven't. You can cite the products liability case about 10 years ago and they returned it, but they've taken others. It depends on the changing winds of the Pennsylvania Supreme Court. Well, so then maybe answer that substantively then, if you would, given what Judge... I was going to say Justice. Judge Fisher said. In terms of whether or not the Pennsylvania Supreme Court would take the certification? No, I don't want you to opine on that. Oh, okay. I'm going to say it. If you were in our shoes, would you certify? I don't know. We traveled here from Erie to argue the matter substantively. It's not something you thought too much about. It's not something that I gave a lot of consideration to. That's fine. I thought you were going to say it all depends on whether we're going to rule your way. If we're leading your way, you don't want to. That's right, and we're very happy to get your opinion. If we're leading against you, you do. Ask in the half an hour and I'll tell you. Well, it's ironic that this case started out in the Court of Common Pleas of Crawford County and only got into the federal court because Pontiac Lake Park was in bankruptcy. Yes, sir. And now they're out of the case because they chose not to appeal the bankruptcy court's decision. And we just have the taxing bodies and we have park restoration fighting over this insurance policy, which doesn't necessarily have to be here. True. I guess the other question besides where this should be, and looking at this statute, doesn't appear like there has been any other decision on this case, but you represent the taxing authorities and taxing authorities in the 67 counties talk to other taxing authorities. Has this issue come up? Not that we've seen, Your Honor, not that we've heard about. And again, the distinction here is one that is, I think, unique because you have an insured here, a named insured, who is not the fee owner of the property in question, but yet is acting as though they have an insurable interest in the property. And we're dealing with the statute that we believe very clearly talks about what is supposed to happen with a fire loss policy and the rights of the named insured for the money involved in that policy when there are unpaid taxes. You haven't challenged the bankruptcy court's determination that park restoration has an insurable interest. No. And at this point in time, it honestly wouldn't be in our interest to know why this was wrong and why the bankruptcy court was correct. Okay. We do believe that the language of the statute is extraordinarily clear and that there is no ambiguity to be found in this legislation. Certainly with regard to the fact pattern that is before you at this point in time. The purpose of the statute is very simply to protect municipalities when you have a situation where there are unpaid taxes and where there is an insurance policy that covers buildings on the parcel and there's a fire. It's a very, very specific set of circumstances here. If there is a fire loss and somebody is going to claim insurance proceeds on that fire, they have to go, the insurance company has to go to the municipality and get certification either that there are unpaid taxes or that there are not unpaid taxes. The process isn't really what's at issue, right? What I've been focusing on, and tell me if I haven't been focusing on the right thing, is the whole issue of whether under the statute, insured property owner and named insured is the same person, has to be the same person. Help us on that. That's the issue that was raised by the district court. It's not an issue that was raised by Park Restoration, the appellee in this matter. It is not an issue that was raised before the bankruptcy court and it really wasn't an issue that was raised on appeal to the district court. Our position is that one use... But they've raised it before us. They have raised it before you. I don't know that it was properly preserved, but it is before you. Well, we have to deal with it because the district court latched onto it. Right. In this instance, the issue of the insured property owner versus named insured simply doesn't come into play because if you follow the statute, if you follow the statute, we go to B-1-2. You mean B-2-1 or I got that wrong? I'm sorry. No, it is. It is B-1, small Roman numeral 2. When a certificate is issued, right, the delinquent taxes, assessment, penalties and user charges against the property. If that certificate is issued, then you go to B-2-2 and that simply says that upon receipt of a certificate and a bill pursuant to the clause 1-2 of this subsection, the insurance company, association or exchange shall return the bill to the treasurer and transfer to the treasurer the amount and amount from the insurance proceeds necessary to pay the taxes, assessments, penalties, etc. as shown on the bill. The municipality shall receive the amount and apply or credit it to payment of the item shown in the bill. So we never touch the phrase insured property owner. It is not applicable in this circumstance. If there is a certificate, however, that is issued under B-1, small Roman numeral 1, then you go to B-2, small Roman numeral 1 and that's the section that talks about an insured property owner. Everything else throughout the entire statute is named insured. And B-2-1 applies when there are no delinquent taxes owed on the property. Right. But here there were delinquent taxes. Here there were delinquent taxes. You know, let's assume for a second that your reading of the statute is the correct reading and that the bankruptcy court's reading of the statute was the correct reading, that the district court's reading was the incorrect reading. What about the takings argument? There is no property interest here to be taken. There is simply no... The lease is not a property interest? My first year property professor would be surprised to hear that. We're not taking the lease, Your Honor. But a lease is a property interest. They had a leasehold. They did have a leasehold, but we're not talking about the lease. We're talking about insurance proceeds. That's a contingent contractual interest that is subject to state regulation. Well, that's a property right they contracted for when they bought the insurance. It is not. Respectfully, Your Honor, it is not a property interest that is protectable under the takings clause. Because it's a contract interest. Because... You're distinguishing it from a property interest from a contract interest. I am, and the case law does as well. This court has. This court has repeatedly held that it's not enough to say that you have a contractual interest in order to say that it's entitled to constitutional protection. So really, it seems like the upshot of your case is that, you know, they didn't do their due diligence when they signed the property on the beach club. Because if they had done their homework, they would have seen that the township, that the owner of the main parcel of land wasn't paying taxes for a long time. Well, I think that that would have been apparent to anybody who did any due diligence. Were the taxes leaned? Yes, they were, Your Honor. Okay. I didn't see anything in the record that indicated that they were leaned. No, I believe that they were. I assumed they were leaned. Yes, sir. So if they were leaned... It would be public record. It would have been public record. Right. The other thing is, is they have the opportunity to decide what type of insurance to get. Right? They went in and they got insurance on the building. And they went in and they got insurance on the contents of the building. There's $611,000 of insurance on the building itself. There was $100,000 of insurance on the contents. They didn't buy business interruption insurance. Okay. Let's suppose I'm renting an apartment somewhere in Philadelphia or Pittsburgh. I'm clearly not the owner of the apartment building. But, you know, I go to your insurance and I say this apartment I'm renting is worth $600,000 and I want an insurance on the... I really like this apartment. It's near my office. It's got a great view across the river. I can see PNC Park. I can see Heinz Field. I really like this apartment. Okay? And I want to insure... I want to insure the value of that apartment in case it gets burnt down. And they say, yeah, all right, in return for $3,000 a month we'll insure it. Okay. All right? And I find it gets burnt down and I find out the owner didn't pay the taxes. Do I get the insurance proceeds? No. Why not? Because this policy, this statute would kick in and the insurance company would have to go to the municipality and if the municipality had put the provisions in place to exercise its rights... All right. What if I say what I should say? Because I know I don't own the apartment. But, you know, I've got this place well furnished and I really like it and I want to insure the contents for $600,000. If you can show that you've got $600,000 worth of contents and the place burns down, I think that you get that money. We're not going after the $100,000 for the contents. Right? They have a specific line item on the insurance policy, $100,000 for the contents. It was $611,000 for the building. They owe 400, well, the debtor owes $478,000 in taxes. We get $478,000 out of that $611,000. Okay. And you're saying that's the distinction between contents and building is consistent with the purpose of the statute, which is to avoid blight and problems with property where the owners allow them to fall into disrepair, don't pay their taxes,  Absolutely, sir. If we adopted your view of 638, would that be providing the trustees a windfall? No. I don't believe that it does provide the trustees a windfall. First of all, one of the underlying claims in the action before the Court of Common Pleas in which the trustees were also a defendant, and that's part of the reason why it got sucked up into the bankruptcy, was because there was a claim of unjust enrichment by Park Restoration against the trustees. And I think that they could still submit a claim against the trustees, against the bankrupt estate at this point in time, for an unsecured claim. But we're not talking about a windfall to the trustees. We're talking about payment of taxes to the municipalities that this property resides in. I don't know the status of the bankruptcy proceeding, but would there be a windfall to the other creditors? Because if you knock out $478,000 worth of Coney Island Lake Park debt, that bankruptcy is going to look a heck of a lot different. I don't know that you would consider it to be a windfall. A windfall to somebody. It's money to somebody. I don't know that it's necessarily a windfall, unless you're going to say that everybody, if we assume that everybody will therefore collect 100% on their obligations due to them from the park, then perhaps you could call it that. But if you're talking about people who are still taking a haircut, I don't know that it's a windfall. All right. Mr. Martinucci, we'll have you back on rebuttal. Thank you, sir. Mr. Meisner. If it may please the court, my name is John Meisner. I'm from Erie, Pennsylvania, and I represent Park Restoration. I'd like to start where I believe the last question was, is this a windfall for the trustees? Yes, it is. And this court can take judicial notice. Because these lots of Cognate Lake Park have been sold. And I just got a bankruptcy filing two days ago that most of the money to the taxing authorities has been paid. And the taxing authority has an agreement with the trustees that this money, money that my client paid for, insurance policy proceeds owned by my client, and insurance property proceeds that vested at the moment of that loss, that's my client's proceeds. The trustees are going to take this money if they're successful. It's going to go to the taxing authorities, and they're going to give back to the trustees $478,000. So this is certainly a windfall for the trustees. Because the trustees were responsible under two different mortgages and loans to maintain insurance on this property. And they failed to do so. So why should we take judicial notice of that? Why can't we take judicial notice? Well, because the public, the bankruptcy record, and these are docket entries on the record that show where the properties were sold and where the money has gone. Under other properties in the 55 acres. Absolutely, Your Honor. I believe so far five of them have been sold. They're selling for $300,000 apiece. That's beautiful. They are leaned. And my head moves around fast, but the court said, has this ever happened before? I checked, and the answer is no. And do you know why? Because no taxing authority has ever let a taxpayer go 17 years without paying the taxes. That's why we have this predicament. Could you be protected, Mr. Miser, if this plays out as you suggest, and I have no reason to question one way or the other on that, but it sounds like something that would be fit for a constructive trust. I mean, this sounds like something that falls into the realm of fraudulent transfer, and I don't mean to imply that it was intentionally fraudulent, but the circumstances as they have occurred, just described by you, would indicate equity would cry out for your client to be able to keep the proceeds, even if we were to find that the state statute requires that the proceeds not be paid as you wish. That may well be, but at what time and at what cost? And why should we have to do that? Because the statute is ambiguous, and if I could demonstrate how. Did you raise that before the bankruptcy court? Yes, I did, Your Honor. Now, let me be clear. I did not. Yes, in fact, the bankruptcy court's opinion makes very clear that I raised it, because the bankruptcy court starts a sentence by saying that two parties agree on one thing, and there is where their disagreement or their agreement ends, and then he goes on to articulate. Plaintiff argues that allowing the taxing authorities to pay their unpaid taxes from the insurance policy results in a gratuitous confiscation. That's not the section I wanted to redeal. It sounded good, though. I apologize. If I could just have a minute. I read it again this morning, and I did not see where the bankruptcy court said specifically that you were claiming that the statute was ambiguous. Yeah, I thought the battleground there was that it wasn't taken. Well, let me read from the court's opinion on page 8, Your Honor. It says, The plaintiff contends that the state statute applies solely to those situations where the fee owner of the property is the insured and where the tax liabilities at issue are the financial responsibility of the owner as well. All right. So you're arguing that that's enough to say that you said there was an ambiguity. Yes. Can I read just the next section, Your Honor? Stated, in other words, the plaintiff contends that the applicability of the state statute does not extend to situations where the insured neither owns the property nor where the tax obligation in the first instance is the primary financial responsibility of some party other than the name insured. So we had raised from the very beginning that there's three principles of law that override this whole discussion. Number one, individuals are generally not responsible for the debts of others. And that's the result of this case. If my client's insurance proceeds are taken to pay the delinquents... We're talking about individuals who normally can't go out and insure property of others. Well, that's correct unless you have an insurable interest, Your Honor, which we clearly had in the management agreement. Second, that the property taxes are the responsibility of the property tax owner. They run with the land. That's why you lien the land. That's why when the land is sold, the lien on the land is paid first and third. If you're going to foist your responsibility to me, it must be clear, unequivocal, and put me on notice that I am accepting the financial responsibility of this delinquent taxpayer. None of that, none of that is present here. Well, you're not accepting it, though. I mean, their argument is that the insurance company is required to pay delinquent taxes in case of a fire before paying the insured. That's what state law seems to clearly require. Does it not? I would respectfully disagree that it clearly says that, Your Honor. This statute's ambiguous, and this is why. If we look at B1, it says we've got to give you a certificate that says, number one, you don't owe taxes. B1II says, or a certificate showing that there's delinquent taxes in the amount. Now, here's where you really got to focus. B2 says, upon the receipt of a certificate issued pursuant to Clause B1A, which is no tax obligation. Clause B1I. Correct, Your Honor. No tax obligation. Then you pay it. And here's the key. Unless the loss exceeds 60% of the aggregate. And then we go to the next sentence. It says, in the case of such a loss. Okay, that is the situation where no delinquent taxes, and we have 60% loss. Okay. In the case of such a loss, the insured property owner. The insured property owner shall follow subsection C and D. That's key, because C and D, which the insured property owner must follow. Don't use the word insured property owner. They use the term name insured. Now, if the insured. What about 2? B2II. They say B1II takes you to B2II. Oh, that is referring to when you get a bill, a tax bill. They're saying B1II. They're saying B1II, which is when you get a certificate that there's taxes owed. Yes. Takes you to B2II. Correct. Yes, but our question is, reading the statute as a whole, what is it intended? If the court accepts their interpretation, Your Honor. That would be in violation of two rules of construction. Number one, all sections of a statute must be read together. So, they say, I want you to forget what becomes before, what becomes after. No, they're just saying, that's I think a little bit exaggerated. As I understand their argument, they're saying B2II doesn't apply, because B2II applies when there are no delinquent taxes owed. What do you say in response to that? That is correct, that that's what applies. But what we're trying to ascertain is, what was the legislature intending when it used the terms name insured and insured property, Your Honor? But does B2II apply when there are delinquent taxes owed, or are they correct that B2II applies only when there are no delinquent taxes? They are correct upon that application, yes, Your Honor. All right, then. But what I'm saying is, you can't just pull that one little part, subsection of a statute out. But if that subsection is inapplicable, then your definitional argument about the usage of named insured and insured property owner falls by the wayside, does it not? As far as I can tell, insured property owner is only mentioned one time, and it's mentioned in that subsection that they claim is inapt. Yes, but you can't just limit to that subsection. Insured property owner clearly also applies to the word named insured in C&D. Now, I understand that's not the section we're working with here today, but we are trying to ascertain legislative intent. And what was the legislature trying to do? And one of the presumptions that we have is that the legislature would not intend to violate the United States or the state constitution. Once there was a loss, we had a vested property right. Well, why isn't it a contractual right? I mean, I'm with you. You heard me challenging opposing counsel about the lease. I mean, you had a property right. You had a leasehold interest, right? But his response, as I understood it, was, yeah, they had a lease, but here we're fighting over insurance proceeds. And Park Restoration's right to insurance proceeds was strictly a contractual right that the insurance company owed it by virtue of that insurance contract. Where is he wrong on that? Here's where he's wrong. That contract says that we're taking this policy subject to the laws. What are the laws of this commonwealth? That individuals are not responsible for the debts of others. That the property taxes are the responsibility of the property owner. And that if you want to take your responsibility and put it on my shoulders, that must be clear, expressed, and so that I know what I'm doing. And the only way to read Pennsylvania law in this statute consistently is to say what the legislature intended, is that when the insured property owner owes taxes, his insurance policy proceeds. Yeah, but Danny said that in one spot, and they mentioned named insured and innumerable. That's correct. But, Your Honor, respectfully, I think the only way to read the statute, consistent with the legislative history, which three different times beginning with the sponsor and two supporters, what did they all say? They don't want property owners to have blighted properties and collecting. Correct. All right, but here's something that quite honestly gave me pause in your brief. You seem to limit that legislative intent about preventing blighted property owners or blighted properties from taking the money and run, right? Yes. Basically, that's what they're... Why doesn't that rationale apply equally to leaseholders who take the money and run? Because we don't have the obligation to repair the property, to keep it safe, to pay the taxes. Those are the responsibilities of somebody else. And as I was digging into the legislation... The judge did have that responsibility under the management agreement, not to pay the taxes, but to keep the property in good repair. Yes, and we can't do that because of the doctrine of impossibility. And we cited in lower briefs the doctrine of impossibility. When you're building burns and it's destroyed, you are excused. It is impossible to return it in the same condition. Didn't Erie maybe sell you the wrong policy? If you had a business interruption policy here, you'd get the money. That may well have been the case, but the issue before us is the construction of the statute and how the legislature intended this statute to work. I understand, but you got to... And the legislature 16 times said named, insured, and didn't say property owner, or owner in fee simple. Mr. Meisner, let me get you to your other argument, which you haven't talked about here, the takings question. And the takings question, it seems to me, you can't argue this taking question, obviously, without attacking this statute itself. You're attacking, and I think you have attacked the statute, that the statute works an unconstitutional taking under both the U.S. and the Pennsylvania Constitution here. But in order to get that takings argument, it seems to me that we would have to find that you're right vested. Yes, and we have cited... And how can you convince us that you're right to those proceeds, that $478,000 vested? Because I have cited a case in our brief that says, our interest vested at the time of the loss. At the moment of the loss, Your Honor, and I'll find the case if you want me to look for it, but it's here. Okay. The moment there's the fire, that's ours. That is when the insurance proceeds vested in us. The argument that has always been made by the appellants is that you've taken this policy subject to Pennsylvania law. This is Pennsylvania law. Therefore, you had no property interest. And I say that that, number one, assumes that there is a reasonable interpretation of the statute. But when the policy says it conforms to the laws of the common law, that means also the laws that say the property owner is responsible for the property taxes, that an individual is not responsible for the debts of another. And if you want to make me responsible, it must be clear and explicit so I understand the nature of my undertaking, none of that of which is present here. Respectfully, I believe the district court properly held that the statute is ambiguous. The legislature intended to read the terms insured, named insured, and insured property owner interchangeably, and that the insurance proceeds that we pay for that are ours and have been interpleaded in court should be awarded to us. Thank you very much. Thank you. Thank you. And Mr. Martinucci? Mr. Martinucci, I'm not going to assume that you knew what Mr. Meisner said about the record in the bankruptcy case, but is that accurate, that properties have been sold and there's an agreement to rebate the share of the taxes on those properties once this case is resolved? No, that is not accurate in part. What's the part that's accurate? The part that's accurate is that three parcels have sold for, I believe, approximately $650,000, and that money has gone to the taxing authorities on their lien. The claim, the allowed claim, was, I think, for $1.2 million, and there are still... What's that, sir? There's a confirmed claim in the bankruptcy. So the claim of the taxing bodies, the total claim of the taxing bodies, including taxes that have accrued since the time of the fire, was for $1.2 million. Okay, so there's the $478,000, but then there's money that is due on top of that. How do you get from $478,000 to $1.2 million in two years? Your Honor, I couldn't get into those details. I don't know that aspect of it. I just know that the allowed claim was for approximately $1.2 million. Where are the proceeds of this policy now? Are they in... they're still stuck in the interpleader? I think they're still in the court. They're interpleaded in the court. Yes, sir. So... Bankruptcy Court have it or Crawford County have it? Bankruptcy. All right. So do you have any objection or reason to believe that if things play out, as Mr. Meisner suggests, that an equitable lien or constructive trust could be placed on these fire insurance proceeds and then distributed to the policyholder? Your Honor, I cannot presume to speak for the debtor. I don't know their total structure in terms of the plan and who else owes or who else is owed money on the plan. And I certainly can't speak for Judge Deller in terms of what he would be willing to approve for the Bankruptcy Court. All I know is that the money, if it gets paid to us, will go to relieve the liens that our clients have on the property. There are still other liens on the property that will have to be satisfied as part of the plan. Yeah, but that has nothing to do with what owed you. I mean, this 478, this whole argument, purports that at the time of this fire, which was sometime in 2013, correct? Yes. My math's still pretty good. It's maybe around three years. The 478 was the amount you had coming to you. If you had more coming to you, you would have sought to get more of that proceed. In terms of what was due at that point in time, yes, sir. How about if you would clarify for the record for us, both you and Mr. Meisner, submit to us what the pending tax claim is on that parcel in Bankruptcy Court? I would see no issue with that. Because you've now raised the point that there is a $1.2 million tax bill due on that property, which doesn't make sense to me. Your Honor, I don't know what the court's protocol on this. My co-counsel, Attorney Bola, is actually very actively involved in the bankruptcy and might be able to give you that information. Why don't you submit it in writing? Okay, sir. Thank you. With regard to the point that you raised early on, Judge, I think Judge Fisher, you raised it, with regard to whether or not the issue had been preserved in the Bankruptcy Court, and Attorney Meisner pointed you to a footnote that I think that any reasonable reading of it would be a stretch to say that he had properly raised the argument at that point in time. The first time that anything really appears is in the brief that was submitted by Park Restoration to the District Court. And at page 12 of the athlete's brief to the District Court, they wrote, They've acknowledged the fact, in court, in writing, that the section that they are talking about doesn't apply to what we are dealing with here. Again, this is a view of the world that says that if there is an ambiguity in one part of the statute, the entire statute fails as ambiguous, and I don't think that that is a correct reading of the law under either state or federal principles. Judge Fisher, about a year or so ago, maybe two years ago, you authored an opinion in Geisinger Community Medical Center versus the Secretary of the United States, HHS, at 794 F3383, and there you indicated that a provision is ambiguous only when the disputed language is reasonably susceptible of different interpretations. Now, in this particular instance, the sections that we rely on only use the phrase named in short. That's the only thing that's applicable here. We don't get into... You're not arguing that that means that you shouldn't read the entire statute together, as Mr. Meisner suggests, are you? I'm saying that you can have an ambiguity in a statute that doesn't affect the statute as a whole or the applicability of another section of the statute. You can read the statute as a whole and you can say, okay, if we're in a situation where the certification is issued that there are no delinquent property taxes, then we reach this other section  and then we have to address the ambiguity. But here, where we're talking about a situation in which the certificate is issued that there are property taxes due, we skip over the section with the ambiguity and we go to the other section that we can give effect to that aspect of the statute without relying on the ambiguous language. I don't think that... I don't think the principle that you're citing applies when you're talking about different definitions or possibly different definitions for the same term. That's what the case that you just cited says, that when you have two different terms that have competing definitions that you can ignore the fact that in one context it means one thing and just use it as it is useful in another context? Well, in this instance, the issue was federal statute and federal regulations being interpreted as opposed to state, but I think that the principle still holds that you can have a provision of a statute that is unambiguous and you can have another provision of the same statute that is ambiguous, theoretically, and you can say that, okay, I can give effect to this portion of the statute without giving effect to the... without looking at the ambiguous portion. Now, Judge Fischer, I don't want to put words in your mouth. It was your opinion, and if I'm wrong, I apologize, but... My opinion speaks for itself. Okay. But that's not Mr. Meisner's argument. I thought Mr. Meisner's argument was, you know, name insured, insured property owner, that there's an ambiguity as you look at the statute as a whole. That seems to be slightly different than what you're arguing. Am I missing something? Because you're saying that you can have a particular view of this section that could be at odds with this other section. Now, that, to me, theoretically makes sense, but not when you're talking about, as he, I believe, is talking about specific terms and trying to read the terms consistently throughout a statute. I think that my problem with that construction is that I think that you can have different words used in different parts of a statute and mean different things without it affecting the use of a term in another portion. So if the phrase insured property owner is used here, and then throughout the statute, throughout the remainder of the statute, they use the term named insured, I don't think that you can automatically say that insured property owner is used interchangeably with named insured. I don't think that that's the case. And if I'm misunderstanding your question, I apologize, but... Anything else to add? I did just want to make one observation with regard to the overarching legal principles that Attorney Meisner referred to. As a practical matter, he starts off with the proposition that we're not responsible for the debts of others. That may, in fact, be an overarching legal principle in the Commonwealth of Pennsylvania and in federal jurisprudence as well. However, common law principles are subject to change by statute. And I think in this particular instance, with regard to this particular contractual right, the Commonwealth of Pennsylvania, the General Assembly, has spoken and said, we want these insurance proceeds to be first subject to the payment of taxes, and then they go to others. So whatever common law principle he relies on, it's a red herring in this situation because the General Assembly has abrogated that common law principle in favor of the idea of protecting the municipalities. Does Mr. Bola have something that you want to add on that tax question that might simplify this? I would love to, Your Honor. Thank you for requesting it. Briefly. Lawrence C. Bola on behalf of the appellants. I was actively involved with the bankruptcy proceeding. There's a confirmed plan. The first claim in that plan belongs to the taxing authorities. It's an agreed-upon approved claim for $1.2 million. And that's on 40 separate different parcels, which include the beachfront property. That's why it's at $1.2 million. It's 39 other parcels plus the beachfront property. But the beachfront property that's involved here is a 55-acre parcel. That's a 55-acre parcel out of about, I'm going to say, 200 acres. That's what I thought. There was more than 55 acres there. All right. And to go further on the plan, there are 17 other secured creditors, mortgages, judgments, et cetera, all of whom have liens on the entire 40 acres. So if and when the park sells real estate, it goes right down the daisy chain, right through the windfall of secured creditors. And maybe 20 years from now, there will be some payment to unsecured creditors, which they would have if they had filed a proof of claim, but they didn't even file a proof of claim. Okay. All right. So it's not a windfall at all. It's a court-approved... All right. Still, having said that, if you would, if you would submit... We will. ...within five days, a submission on that not to exceed five pages. We'll be very happy to do that, Judge. And Mr. Meisner, if you disagree with that factual submission, you can submit a similar response in five days not to exceed five pages. Five days after theirs, Your Honor? Five days after theirs. May I make one correction? The call between the two of you was that the beach club was on 55 acres. It's only on about less than... I understand. I understand that.  Correct. Just correct. Thank you, Your Honor. Okay. We thank both counsel, or all counsel in this case, for an interesting case, a case that's, well, we'll figure it out somehow, but we'll take it under advisement. Thank you very much.